1   WILLIAM MCGRANE [57761]
    MATTHEW SEPUYA [287947]
2   MCGRANE PC
3   4 Embarcadero Center, Suite 1400
    San Francisco, CA 94111
4   Telephone: (415) 292-4807
    william.mcgrane@mcgranepc.com
5   matthew.sepuya@mcgranepc.com

6   [additional counsel listed on signature page]

7   Attorneys for Plaintiffs John Rochfort, Erica Sharar, Sara Adamski, Rheannon
    Androckitis, Patricia Bonds, Melissa Cook, Melissa Douglas, Erin Hazelwood,
8   Daniella Holmes, Natalia Grabovsky, David Lucas, Tracey Madden, and
    Wendy Stotsenburg on behalf of themselves and all other persons similarly
9   situated

                    UNITED STATES DISTRICT COURT
10
                  SOUTHERN DISTRICT OF CALIFORNIA

11  JOHN ROCHFORT, ERICA SHARAR,          Case No. 3:20-cv-00508-GPC-BLM
12  SARA ADAMSKI, RHEANNON
    ANDROCKITIS, PATRICIA BONDS,          CLASS ACTION
13  MELISSA COOK, MELISSA
    DOUGLAS, ERIN HAZELWOOD,              FIRST AMENDED COMPLAINT
14  DANIELLA HOLMES, NATALIA              FOR INJUNCTIVE RELIEF FOR
    GRABOVSKY, DAVID LUCAS,               VIOLATION OF THE
15  TRACEY MADDEN, and WENDY              CALIFORNIA UNFAIR
    STOTSENBURG on behalf of              COMPETITION LAW AND FOR
16  themselves and all others similarly   DAMAGES FOR VIOLATION
17  situated,                             OF THE CALIFORNIA
                        Plaintiffs,       CONSUMER LEGAL
18           v.                           REMEDIES ACT
19  EF INSTITUTE FOR CULTURAL
    EXCHANGE, INC., EF EDUCATION          [DEMAND FOR JURY TRIAL]
20  FIRST, INC. AND EF EDUCATION
    FIRST INTERNATIONAL, LTD.
21                   Defendants.
22

───────────────────────────────────────────
First Amended Complaint for Injunctive Relief for Violation of the California Unfair
Competition Law and for Damages for Violation of the California Consumer Legal Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-cv-00508-GPC-BLM

1    Come now Plaintiffs and allege as follows:

2                              **Parties**

3        1.    Plaintiff John Rochfort is a resident of San Diego, California

4    whose EF SWISS International Tour (as that term is defined, *infra*) was

5    canceled by EF Defendants (as that term is defined, *infra*) as a result of the

6    Virus Epidemic (as that term is defined, *infra*).

7        2.    Plaintiff Erica Sharar is a resident of Santa Ana, California

8    whose EF SWISS International Tour (as that term is defined, *infra*) was

9    canceled by EF Defendants (as that term is defined, *infra*) as a result of the

10   Virus Epidemic (as that term is defined, *infra*).

11       3.    Plaintiffs John Rochfort and Erica Sharar are hereafter

12   sometimes collectively referred to as the California residents.

13       4.    Plaintiff Daniella Holmes is a resident of Lakewood,

14   Washington, whose EF SWISS International Tour (as that term is defined,

15   *infra*) was canceled by EF Defendants (as that term is defined, *infra*) as a

16   result of the Virus Epidemic (as that term is defined, *infra*).

17       5.    Plaintiff Rheannon Androckitis is a resident of Port Orchard,

18   Washington, whose EF SWISS International Tour (as that term is defined,

19   *infra*) was canceled by EF Defendants (as that term is defined, *infra*) as a

20   result of the Virus Epidemic (as that term is defined, *infra*).

21       6.    Plaintiff Melissa Douglas is a resident of Las Vegas, Nevada,

22   whose EF SWISS International Tour (as that term is defined, *infra*) was

---

1

First Amended Complaint for Injunctive Relief for Violation of the California Unfair
Competition Law and for Damages for Violation of the California Consumer Legal
Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-cv-00508-
GPC-BLM

1    canceled by EF Defendants (as that term is defined, *infra*) as a result of the

2    Virus Epidemic (as that term is defined, *infra*).

3        7.     Plaintiff Natalia Grabovsky is a resident of Scottsdale, Arizona

4    whose EF SWISS International Tour (as that term is defined, *infra*) was

5    canceled by EF Defendants (as that term is defined, *infra*) as a result of the

6    Virus Epidemic (as that term is defined, *infra*).

7        8.     Plaintiff Melissa Cook is a resident of Owensboro, Kentucky

8    whose EF SWISS International Tour (as that term is defined, *infra*) was

9    canceled by EF Defendants (as that term is defined, *infra*) as a result of the

10    Virus Epidemic (as that term is defined, *infra*).

11        9.     Plaintiff Wendy Stotsenburg is a resident of Old Hickory,

12    Tennessee, whose EF SWISS International Tour (as that term is defined,

13    *infra*) was canceled by EF Defendants (as that term is defined, *infra*) as a

14    result of the Virus Epidemic (as that term is defined, *infra*).

15        10.    Plaintiff Patricia Bonds is a resident of Prairieville, Louisiana,

16    whose EF SWISS International Tour (as that term is defined, *infra*) was

17    canceled by EF Defendants (as that term is defined, *infra*) as a result of the

18    Virus Epidemic (as that term is defined, *infra*).

19        11.    Plaintiff Erin Hazelwood is a resident of Lafayette, Louisiana,

20    whose EF SWISS International Tour (as that term is defined, *infra*) was

21    canceled by EF Defendants (as that term is defined, *infra*) as a result of the

22    Virus Epidemic (as that term is defined, *infra*).

First Amended Complaint for Injunctive Relief for Violation of the California Unfair
Competition Law and for Damages for Violation of the California Consumer Legal
Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-cv-00508-
GPC-BLM

1    12.    Plaintiff Sara Adamski is a resident of Shelby Township,

2   Michigan, whose EF SWISS International Tour (as that term is defined,

3   *infra*) was canceled by EF Defendants (as that term is defined, *infra*) as a

4   result of the Virus Epidemic (as that term is defined, *infra*).

5    13.    Plaintiff Tracey Madden is a resident of Litchfield, New

6   Hampshire, whose EF SWISS International Tour (as that term is defined,

7   *infra*) was canceled by EF Defendants (as that term is defined, *infra*) as a

8   result of the Virus Epidemic (as that term is defined, *infra*).

9    14.    Plaintiff David Lucas is a resident of Manlius, New York,

10   whose EF SWISS International Tour (as that term is defined, *infra*) was

11   canceled by EF Defendants (as that term is defined, *infra*) as a result of the

12   Virus Epidemic (as that term is defined, *infra*).

13    15.    Plaintiffs Sara Adamski, Rheannon Androckitis, Patricia Bonds,

14   Melissa Cook, Melissa Douglas, Erin Hazelwood, Daniella Holmes, Natalia

15   Grabovsky, David Lucas, Tracey Madden, and Wendy Stotsenburg are all

16   hereafter sometimes collectively referred to as the non-California residents.

17    16.    Defendant EF Institute for Cultural Exchange, Inc. (EF CAL#1)

18   is a California corporation.

19    17.    Defendant EF Education First, Inc. (EF CAL#2) is a California

20   corporation and—plaintiffs are informed and believe and on that basis

21   allege—the 100% owner of EF CAL#1.

22

---

3

First Amended Complaint for Injunctive Relief for Violation of the California
Unfair Competition Law and for Damages for Violation of the California Consumer
Legal Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-cv-00508-
GPC-BLM

1    18.    Defendant EF Education First International, Ltd., a/k/a EF

2    Education First International AG (EF SWISS) is a corporation organized

3    under the laws of Switzerland which is also headquartered in Lucerne,

4    Switzerland and the 100% owner of EF CAL#2 and thus the indirect 100%

5    owner of EF CAL#1 through EF CAL#2.

6    19.    EF CAL#1, EF CAL#2, and EF SWISS are hereafter sometimes

7    collectively referred to as EF Defendants.

8                                    **Jurisdiction**

9    20.    The Class Members (as that term is defined, *infra*) are citizens

10   of most (if not all) fifty states of the United States while EF CAL#1 and EF

11   CAL#2 are dual citizens of California and Massachusetts, and EF SWISS is

12   organized under the laws of Switzerland and also headquartered in

13   Switzerland such that minimal diversity exists in this case for purposes of

14   the federal Class Action Fairness Act of 2005 (28 U.S.C. § 1332(d)

15   [CAFA]).

16   21.    This case involves more than five million dollars ($5,000,000)

17   in damages thus meeting the minimum amount in controversy requirement

18   of CAFA § 1332(d)(6).

19   22.    This Court has general jurisdiction over EF CAL#1 because EF

20   CAL#1 is incorporated in the State of California.

21   23.    This Court has general jurisdiction over EF CAL#2 because EF

22   CAL#2 is incorporated in the State of California.

---

First Amended Complaint for Injunctive Relief for Violation of the California Unfair
Competition Law and for Damages for Violation of the California Consumer Legal
Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-cv-00508-
GPC-BLM

1    24.    The California residents allege that the District Court has

2  specific jurisdiction over EF SWISS such that EF SWISS is a proper party

3  defendant herein because, *inter alia*, EF SWISS owns and directly operates a

4  highly interactive website (see https://www.ef.edu/contact/world-wide/)

5  along with numerous related websites and interactive landing pages located

6  within such websites (collectively, the EF SWISS Websites) and therefore

7  meets the purposeful direction test applicable when a foreign corporation

8  employs a highly interactive website to enter into written contracts with the

9  residents of a forum jurisdiction. See, e.g., *Mavrix Photo, Inc. v. Brand*

10  *Techs., Inc.* (9th Cir. 2010) 647 F.3d 1218, 1227-1230 (citing *Cybersell, Inc.*

11  *v. Cybersell, Inc.* (9th Cir. 1997) 130 F.3d 414, 418-19 and *Zippo Mfg. Co.*

12  *v. Zippo Dot Com, Inc.* (W.D. Pa. 1997) 952 F. Supp. 1119 regarding

13  federal law applicable to web-based claims for asserting specific jurisdiction

14  over a foreign entity in the forum state where a District Court is sitting in

15  diversity jurisdiction; see also *Emrit v. National Football League* (D. Hi.

16  February 28, 2020) 2020 U.S. Dist. LEXIS 37464, *9 (citing *Walden v.*

17  *Fiore* (2014) 571 U.S. 277 and *Lazar v. Kroncke* (9th Cir. 2017) 862 F.3d

18  1186 regarding federal law generally applicable to a District Court's

19  asserting specific jurisdiction over a foreign entity in the forum state where a

20  District Court is sitting in diversity jurisdiction.)

21    25.    Specifically, the EF SWISS Websites solicit, *inter alia*, the

22  California residents to apply online to enroll to embark on an "EF

First Amended Complaint for Injunctive Relief for Violation of the California Unfair Competition Law
and for Damages for Violation of the California Consumer Legal Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.,* Case No. 3:20-cv-00508-
GPC-BLM

1   Educational Tour" (EF SWISS International Tours) pursuant to the terms of

2   a proposed form of "Booking Conditions" (the EF SWISS International

3   Tours Contracts, a true copy of which is attached hereto as Exhibit 1)

4   between, *inter alia*, EF SWISS on the one hand and, *inter alia*, the

5   California residents on the other hand which EF SWISS International Tour

6   Contracts (i) were first retrieved by the California residents from the EF

7   SWISS Websites, (ii) were then sent by the California residents back to the

8   EF SWISS Websites along with a $95 mandatory payment, (iii) were then

9   received by the EF SWISS Websites along with said mandatory $95

10   payment, and (iv) were ultimately acknowledged as mutually binding only

11   after EF SWISS had first been able to successfully negotiate the $95

12   mandatory deposit paid by the California residents by way of an email

13   written directly to the California residents by EF SWISS in its capacity as

14   the only provider of goods and services to, *inter alia*, the California residents

15   pursuant to the EF SWISS International Tours Contracts (the EF SWISS

16   Acts).

17       26.    By engaging in the EF SWISS Acts, EF SWISS aimed

18   intentional acts at the State of California knowing cognizable legal harm was

19   likely to be suffered in the State of California because, as is discussed in

20   more detail, *infra*, the EF SWISS Tours Contracts contained numerous

21   unconscionable provisions inserted therein by EF SWISS in violation of

22   California Civil Code section 1780(a)(19) which purportedly allowed EF

6

First Amended Complaint for Injunctive Relief for Violation of the California
Unfair Competition Law and for Damages for Violation of the California Consumer
Legal Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-cv-00508-
GPC-BLM

1   SWISS to deprive the California residents of any rights to sue EF SWISS on

2   any basis whatsoever including, but not limited to, any future breach of

3   contract, future tort or future breach of a statutory obligation.

4        27.    By engaging in the EF SWISS Acts, EF SWISS also

5   purposefully availed itself of the privileges of conducting business in the

6   State of California.

7                    **Conflict of Laws/Choice of Laws**

8        28.    EF Defendants may not rely on the sister state conflict of

9   laws/choice of laws clause EF SWISS inserted into the EF SWISS Tours

10  Contracts because California Civil Code section 1751 expressly prohibits

11  the waiver of rights that would be incidentally suffered by the Class

12  Members (as that term is defined, *infra*) were the substantive law of

13  Massachusetts enforced against them in derogation of *America Online, Inc.*

14  *v. Superior Court of Alameda Cty.* (*Mendoza*) (2001) 90 Cal. App.4th 1

15  (holding the California Consumer Legal Remedies Act [Cal. Civ. Code §§

16  1750 *et. seq* (CLRA)] expresses a strong public policy against unfair and

17  deceptive business practices); see also *Gemini Techs., Inc. v. Smith &*

18  *Wesson Corp.* (*Gemini*) (2019) 931 F.3d 911, 915-917 (holding strong

19  forum state public policy that is interfered with by a contractual provision

20  providing for a sister state choice of law renders such a sister state choice

21  of law clause unenforceable without regard to any other factor when a

22  District Court sits in diversity in the forum state).

First Amended Complaint for Injunctive Relief for Violation of the California Unfair
Competition Law and for Damages for Violation of the California Consumer Legal
Remedies Act
*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.,* Case No. 3:20-cv-00508-
GPC-BLM

1    see also *Salesforce.com Inc. v. GFE, Inc.* (*Salesforce*) (N.D. Cal. August 12,

2    2019) 2019 U.S. Dist. LEXIS 136745 *28 (citing *Gemini* as holding that "In

3    contrast to [the out of circuit] balancing approach, a strong public policy is

4    an independently sufficient ground to invalidate a forum selection clause

5    under Ninth Circuit precedent, as the Ninth Circuit very recently

6    reaffirmed.")

7         29.    Under California law governing conflict of laws/choice of laws,

8    the law of California applies in this case unless the EF Defendants can

9    establish that otherwise applicable foreign law conflicts with California law.

10   See *Clothesrigger, Inc. v. GTE Corp.* (1987) 191 Cal.App.3d 605.

11        30.    However, there is no true conflict of laws/choice of laws issue

12   presented by this case since the consumer protection laws of California and

13   Massachusetts both condemn the insertion of unconscionable contract

14   clauses in consumer contracts, with the only meaningful difference between

15   the laws of the two states being the fact that Massachusetts law does not

16   expressly contemplate that a plaintiff may obtain an affirmative award of

17   money damages and attorney fees when a consumer is victimized by an

18   unconscionable contract clause. See Brady Williams, *Unconscionability as a*

19   *Sword* (*Williams*) 107 Cal. L.R. 2015, 2019-2026 (2019).

20        31.    The State of Massachusetts, however, has no interest in limiting

21   the amount of money its own consumers (or any other United States'

22   consumers) may recover from EF SWISS under California law and EF

First Amended Complaint for Injunctive Relief for Violation of the California
Unfair Competition Law and for Damages for Violation of the California Consumer
Legal Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-cv-00508-
GPC-BLM

1   CAL#1 and EF CAL#2 are not being sued for anything other than equitable

2   relief in this case. Absent any choice of law/conflict of laws interests on the

3   part of Massachusetts, no true conflict of laws/choice of laws issue is

4   presented by this case. See *Hurtado v. Superior Court* (1974) 11 Cal. 3d 574,

5   579-580 (holding that, under California governmental interests approach to

6   conflict of laws/choice of laws, where Mexico and California both recognize

7   wrongful death as a tort, Mexico has no interest in limiting the remedies

8   available to Mexican nationals as against the nationals of a foreign state).

9                                **Choice of Venue**

10       32.    Venue is appropriate in this District under CAFA §§ 1391(b)(1)

11   and/or 1391(b)(3) because the District Court has either general and/or at least

12   specific jurisdiction over each of the EF Defendants.

13       33.    In addition to the provisions of the otherwise applicable

14   provisions of CAFA §§ 1391(b)(1) and/or 1391(b)(3), EF Defendants may

15   not rely on the sister state forum selection clause EF SWISS inserted into the

16   EF SWISS Tours Contracts because California Civil Code section 1751

17   expressly prohibits the waiver of rights that would be incidentally suffered by

18   the Class Members (as that term is defined, *infra*) were the Massachusetts

19   forum selection clause enforced against them by the District Court in

20   derogation of *Mendoza*, *supra*, *Gemini*, *supra*, and *Salesforce*, *supra.*

21

22

---

First Amended Complaint for Injunctive Relief for Violation of the California
Unfair Competition Law and for Damages for Violation of the California Consumer
Legal Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-cv-00508-
GPC-BLM

1

**Charging Allegations**

2   34.   The EF SWISS International Tours Contract has provisions that

3   were inserted into it by EF SWISS that were (and remain) unconscionable as

4   that term is defined by California Civil Code section 1780(a)(19). These

5   unconscionable provisions include, but are not limited to, the following:

6   **"I [the United States consumer] agree to release EF [SWISS] …**

7   **from, and agree not to sue [EF SWISS] for, any and all claims of**

8   **any nature related in any manner to my participation in an EF-**

9   **sponsored tour … including, but not limited to, claims for**

10   **negligence, breach of contract, breach of express or implied**

11   **warranties, negligence or wrongful death, or any statutorily based**

12   **claim. I hereby unconditionally and unequivocally waive any and**

13   **all claims and demands for all damages, losses, costs, and**

14   **expenses of any nature whatsoever (including attorneys' fees) on**

15   **account of or arising out of any and all personal injury, death,**

16   **bodily injury, mental anguish, emotional distress, or property or**

17   **other damage that I may suffer from any cause whatsoever**

18   **related in any way to my participation in any EF [SWISS]-**

19   **sponsored tour."**

20   (EF SWISS Immunity Clause).

21

22

First Amended Complaint for Injunctive Relief for Violation of the California
Unfair Competition Law and for Damages for Violation of the California Consumer
Legal Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-cv-00508-
GPC-BLM

1        35.    The 30-day pre-litigation notice required by California Civil

2  Code section 1782 that alerted EF SWISS to the fact that—by earlier

3  inserting the EF SWISS Immunity Clause into the EF SWISS International

4  Tours Contracts—EF SWISS had and was acting in violation of California

5  Civil Code section 1780(a)(19) was accomplished in this case by service of a

6  "Complaint for Injunction" filed March 11, 2020, in San Diego Superior

7  Court in a case entitled *Douglas v. EF Institute for Cultural Exchange, Inc. et*

8  *al.* San Diego Superior Court Case No. 37-2020-00013374 CU-MC-CTL

9  (Douglas case), which Douglas case sought injunctive relief prohibiting the

10  enforcement of the unconscionable aspects of the EF SWISS International

11  Tours contracts as well as mandatory injunctive relief requiring payment of

12  refunds under California Civil Code sections 1780(a)(2) and 1780(a)(5)

13  based on allegations of EF SWISS' violations of California Civil Code

14  section 1780(a)(19).

15        36.    The Douglas case was served on EF SWISS by no later than

16  March 31, 2020, and EF SWISS was specifically put on notice that such

17  service of the Douglas case was intended to (and would) serve as the 30-day

18  pre-litigation notice of the fact EF SWISS had violated (and was violating)

19  California Civil Code section 1780(a)(19) that is otherwise required by

20  California Civil Code section 1782 by March 31, 2020, as well.

21        37.    Between March 31, 2020, and May 15, 2020, EF SWISS has in

22  no way either actually attempted to—or otherwise even offered to

First Amended Complaint for Injunctive Relief for Violation of the California
Unfair Competition Law and for Damages for Violation of the California Consumer
Legal Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-cv-00508-
GPC-BLM

1   someday—correct, repair, replace or rectify its having initially inserted the

2   EF Immunity Clause in the EF SWISS International Tours Contracts but

3   has instead maintained to both the public and Ms. Douglas that, consistent

4   with the unconscionable nature of EF Immunity Clause it inserted in the EF

5   SWISS International Tours Contracts, that it is entirely privileged to dictate

6   any terms it likes to remedy its wholesale cancellation of the EF SWISS

7   International Tours, including giving the Class Members (as that term is

8   defined, *infra*) a Hobson's choice of taking what EF SWISS describes as

9   travel vouchers (a true copy of which is attached hereto as Exhibit 2 [Travel

10  Vouchers])—which Travel Vouchers are, as is discussed, *infra*, nothing

11  more than unregistered securities under the '33 Act and the '34 Act—or,

12  where the Class Members (as that term is defined, *infra*) do not wish to

13  accept such Travel Vouchers, then arbitrarily deducting previously-never-

14  agreed-to-in-writing liquidated damages of between $1000 and $500 from

15  the cash refunds EF Defendants have otherwise offered to Class Members

16  (as that term is defined, *infra*).

17      38.    Unconscionability has two aspects to it, i.e., procedural

18  unconscionability and substantive unconscionability. See *De La Torre v.*

19  *Cashcall, Inc.* (2018) 5 Cal.5th 966; see also *Williams*, 107 Cal. L.R. at

20  2019-2026 (discussing the law of unconscionability as it presently exists

21  throughout the United States, citing numerous authorities).

22

12
First Amended Complaint for Injunctive Relief for Violation of the California
Unfair Competition Law and for Damages for Violation of the California Consumer
Legal Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-cv-00508-
GPC-BLM

1    39.    The EF SWISS International Tours Contracts were procedurally

2    unconscionable because, *inter alia*, the EF SWISS Immunity Clause is

3    deliberately buried in a 5.75 point font on the next to the last page of a

4    densely printed eight-page long-form that otherwise utilizes either 7 point

5    font or 7.75 point font and which EF SWISS Immunity Clause, on its face,

6    purports to immunize EF SWISS and EF CAL#1 from any possible future

7    liability to the Class Members (as that term is defined, *infra*) that in any

8    manner arises out of or relates to their having become American counter-

9    parties to the EF SWISS International Tours Contracts (i) which 5.75 point

10   font terms were entirely beyond the reasonable expectations of the Class

11   Members (as that term is defined, *infra*) and (ii) which 5.75 point font terms

12   were presented to the Class Members (as that term is defined, *infra*) on a

13   "take it or leave it" basis. See *Dennison v. Rosland Capital LLC* (2020) 47

14   Cal.App.5th 204, 211 (citing *Sanchez v. Valencia Holding Co., LLC* (2015)

15   61 Cal.4th 899, 914 [describing the nature of procedural unconscionability

16   in California]).

17   40.    The EF SWISS Immunity Clause was substantively

18   unconscionable because it is so extremely one-sided as to shock the

19   conscience in that it purports to permit EF SWISS to take as much future

20   advantage of its American counter-parties as it might wish, all without any

21   fear of being sued anywhere in the world no matter how badly it

22   subsequently behaves towards those American counter-parties.

First Amended Complaint for Injunctive Relief for Violation of the California Unfair
Competition Law and for Damages for Violation of the California Consumer Legal
Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-cv-00508-
GPC-BLM

41.     Any contract such as the EF SWISS Immunity Clause that gives one side so much power is just the kind of absurd "bargain … no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other …" described in *Hume v. United States* (1889) 132 U.S. 406, 411; see also *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1409 (noting that "Faust, depending on which version of the story you read, might or might not end up going to hell because he freely—and without duress—sold his soul to the Devil …  But someone who makes a faustian pact to become someone else's slave in our system is going to find that, among other things, the deal is unconscionable, period, end of discussion.")

42.     Because EF SWISS was the only person providing goods and services to the Class Members (as that term is defined, *infra*) and because EF SWISS is the sole owner of EF CAL#1 and EF CAL#2—EF SWISS is necessarily the sole and only person responsible for the illegal insertion of the EF SWISS Immunity Clause into the EF SWISS International Tours Contracts and, as such, EF SWISS is directly liable to each of the Class Members (as that term is defined, *infra*) for actual damages of not less than $1,000 per Class Member (as that term is defined, *infra*), punitive damages and attorney fees under California Civil Code section 1780(a)(1)-(4).

43.     As a direct, natural and proximate result of EF SWISS' insertion of the EF SWISS Immunity Clause into the EF SWISS

First Amended Complaint for Injunctive Relief for Violation of the California Unfair Competition Law and for Damages for Violation of the California Consumer Legal Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-cv-00508-GPC-BLM

1   International Tours Contracts each Class Member (as that term is defined,

2   *infra*) has suffered actual damages in that none of the Class Members (as

3   that term is defined, *infra*) have ever received a full cash refund of the

4   monies they paid EF SWISS and the presence of that EF SWISS Immunity

5   Clause has directly contributed to EF SWISS' decision to refuse to live up

6   to its contractual responsibilities to deal fairly and in good faith with the

7   Class Members (as that term is defined, *infra*).

8       44.    Following EF SWISS' cancellation of all of the EF SWISS

9   International Tours, the EF Defendants, and each of them, have unilaterally

10  sent Travel Vouchers to numerous Class Members (as that term is defined,

11  *infra*).

12      45.    The Travel Vouchers consist, *inter alia*, of freely negotiable

13  instruments containing an express and absolute promise by one or more of

14  the EF Defendants to pay to the then-owner of such freely negotiable Travel

15  Vouchers a definite sum of money on or before September 30, 2022.

16      46.    The Travel Vouchers thus constitute "notes" as that term is

17  used in 15 U.S.C. § 77b(a)(1), which "notes" are presumptive "securities"

18  which cannot be offered to the public without violating 15 U.S.C. § 78(e) in

19  that (i) the Travel Vouchers have been distributed to tens if not hundreds of

20  thousands of persons in all 50 states of the United States, (ii) the Travel

21  Vouchers are the equivalent of zero-coupon bonds in that they have a face

22  value pegged by their EF Defendant issuers that is substantially higher than

First Amended Complaint for Injunctive Relief for Violation California of the Unfair
Competition Law and for Damages for Violation of the California Consumer Legal
Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-cv-00508-
GPC-BLM

1    the guaranteed cash redemption value of such Travel Vouchers if same are

2    redeemed for cash before September 30, 2022, and (iii) the Travel Vouchers

3    are freely transferrable by their owners. See *Reves v. Ernst & Young* (1990)

4    494 U.S. 56 (describing various tests for determining when the presumption

5    that notes are securities subject to both the '33 Act and the '34 Act should

6    be found to apply).

7        47.    It is disjunctively an illegal, unfair, and fraudulent act on the

8    part of the EF Defendants to be offering Travel Vouchers to the Class

9    Members (as that term is defined, *infra*).

10        48.    Illegal because the EF Defendants' issuance of the Travel

11    Vouchers violates both the '33 Act and the '34 Act since the Travel

12    Vouchers are unregistered securities the distribution of which is actionable

13    *per se* under 15 U.S.C. § 77l(a)(1) on account of the fact such distribution

14    violates 15 U.S.C. § 77(e) and because the distribution of these Travel

15    Vouchers is fraught with both affirmative fraud and fraud by omission as is

16    described, *infra*.

17        49.    Unfair because the Travel Vouchers represent an attempt by the

18    EF Defendants to preemptively deprive whoever receives them of any right

19    to participate in any class action naming the EF Defendants as parties (i)

20    without telling the Class Members (as that term is defined, *infra*) that class

21    action litigation is already pending respecting the negative consequences of

22    the EF Immunity Clause that may favorably affect their ability to obtain full

First Amended Complaint for Injunctive Relief for Violation of the California
Unfair Competition Law and for Damages for Violation of the California Consumer
Legal Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-cv-00508-
GPC-BLM

1    cash refunds plus a pro rata share of punitive damages in lieu of the Travel

2    Vouchers; (ii) without telling the Class Members (as that term is defined,

3    *infra*) that no particular EF Defendant appears to have explicitly agreed to

4    stand good for the EF Defendants' substantial operating and financial

5    obligations under the Travel Vouchers or disclose anything about the

6    financial condition of whichever of the EF Defendants that does intend to

7    stand good for the EF Defendants' substantial financial and operating

8    obligations under the Travel Vouchers; (iii) without telling the Class

9    Members (as that term is defined, *infra*) that the face amount of Travel

10   Vouchers only represents a credit against the entirely unpredictable costs of

11   future travel between the date of issuance of the Travel Vouchers and

12   September 30, 2022, such that the Class Members (as that term is defined,

13   *infra*) who do accept the Travel Vouchers are necessarily making a macro-

14   economic wager on deflation being the result of the current economic crisis

15   as opposed to the perhaps much more likely fact that massive inflation will

16   wind up being the result of the federal government's injecting trillions of

17   dollars into the American economy in the hopes of avoiding another Great

18   Depression, as occurred in the Weimar Republic in the early 1920s.

19   https://en.wikipedia.org/wiki/Hyperinflation_in_the_Weimar_Republic

20        50.    Fraudulent as that term is used in the UCL for all the reasons

21   outlined in ¶¶ 48-49, *supra*.

22

First Amended Complaint for Injunctive Relief for Violation of the California
Unfair Competition Law and for Damages for Violation of the California Consumer
Legal Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-cv-00508-
GPC-BLM

**Class Allegations**

51.     The California residents and the non-California residents (the Putative Class Representative Plaintiffs) bring this putative class action case on behalf of themselves and all other persons (Class Members individually and the Class collectively) (i) who entered into the EF SWISS International Tour Contracts by virtue of their having received an email from EF SWISS during the Class Period acknowledging that a mutually binding contract existed between such persons and EF SWISS; (ii) whose EF SWISS International Tours were cancelled by the EF Defendants due to the Virus Epidemic (as that term is defined, *infra*) (iii) who have either subsequently received Tour Vouchers sent to them by EF Defendants or who have for any other reason or no reason at all not received a full cash refund of all monies such persons ever paid pursuant to the EF SWISS International Tour Contracts to EF SWISS or to anyone else (specifically including but not limited to EF CAL#1 and EF CAL#2) acting or purporting to act on EF SWISS' behalf.

52.     The Class Period begins on January 30, 2020, when, due to the spread of the coronavirus (the Virus Epidemic) the World Health Organization first declared a worldwide emergency and ends on the date when a class is certified in this case.

53.     The claims of the Putative Class Representative Plaintiffs are typical of the claims of the Class Members.

First Amended Complaint for Injunctive Relief for Violation of the California Unfair Competition Law and for Damages for Violation of the California Consumer Legal Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-cv-00508-GPC-BLM

54.     There is a commonality of issues amongst the Class Members in that, *inter alia*, all Class Members share a common interest in the conflict of laws/choice of laws and choice of forum issues raised by this case as well as the question of what remedies are available to them should the EF SWISS Immunity Clause be determined to be unconscionable.

55.     The Putative Class Representative Plaintiffs are informed and believe that there are tens of thousands if not hundreds of thousands of Class Members.

56.     Treating this dispute as a class action is a superior method of adjudication since the joinder of all Class Members individually would be impractical.

57.     Additionally, the amount of damages would be modest on an individual basis, although significant in the aggregate.

58.     Additionally, it would be impractical for most of the Class Members to address the EF Defendants' wrongdoings individually.

59.     There should be no significant difficulties in managing this case as a class action.

60.     The Putative Class Representative Plaintiffs can and will fairly and adequately represent and protect the interests of the Class Members and they have retained competent and experienced counsel, who will vigorously represent the interests of the Class towards that end.

First Amended Complaint for Injunctive Relief for Violation of the California
Unfair Competition Law and for Damages for Violation of the California Consumer
Legal Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-cv-00508-
GPC-BLM

1    **First Claim for Relief**

2    **(Cal. Civ. Code § 17203; Injunctive Relief for Violation of the Unfair**

3    **Competition Law; All EF Defendants)**

4        61.  Class realleges ¶¶1-60.

5        62.  The conduct of the EF Defendants in sending the Class the

6    Travel Vouchers is disjunctively illegal, unfair and fraudulent under the

7    provisions of the California Unfair Competition Law (Cal. B.&.P. Code §§

8    17200 et. seq. [UCL]) and has caused the Class to suffer injury by way of

9    loss of property or money as the direct, natural and proximate result of the

10   EF Defendants having all actively misled the Class Members as to their

11   rights and duties under the EF SWISS International Tour Contracts and

12   thereby caused them or some of them to incur legal and other expenses to

13   determine their best course of conduct respecting the receipt of such Travel

14   Vouchers as well as delayed their making demands for the full cash refunds

15   they are entitled to as augmented by the $1,000 minimum floor put on any

16   CLRA recovery as against EF SWISS by directly interfering with the

17   prosecution of this class action itself.

18       63.  In light of the fact it (Class) has suffered and will continue to

19   suffer injury in fact by way of loss of property or money—and thus, under

20   *Thibodeau v. ADT Sec. Servs.* (S.D. Cal. Feb. 28, 2017) 2017 U.S. Dist.

21   LEXIS 28202 *9 (citing *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th

22   310, 323-325 for the proposition that "[Proposition 64] injury in fact is not a

First Amended Complaint for Injunctive Relief for Violation of the California
Unfair Competition Law and for Damages for Violation of the California Consumer
Legal Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-cv-00508-
GPC-BLM

1    substantial or insurmountable hurdle … [since] [p]laintiff need only allege

2    an identifiable trifle of economic injury" (internal citations eliminated) to

3    demonstrate sufficient injury in fact to confer UCL standing)—the Class has

4    standing under the UCL to now seek declaratory, injunctive and other

5    equitable relief herein and now seeks a preliminary injunction forbidding the

6    EF Defendants from any further communications with the Class whatsoever

7    during the pendency of this class action.

8         64.   Also, the Class seeks a declaration that the Travel Vouchers

9    that have previously and illegally been distributed to the Class Members by

10   the EF Defendants, and each of them, are disjunctively illegal, unfair and

11   fraudulent under the UCL such that they (the Travel Vouchers) must and

12   should be deemed void.

13        Wherefore Class prays judgment as is hereafter set forth.

14                         **Second Claim for Relief**

15   **(Cal. Civ. Code § 1780(a)(19) Damages for Violation of the California**

16              **Consumer Legal Remedies Act; EF SWISS Only)**

17        65.   Class realleges ¶¶ 1-64.

18        66.   By itself—and without regard to the numerous other similarly

19   unconscionable clauses of various types contained in the EF SWISS

20   International Travel Contracts—the EF SWISS Immunity Clause is violative

21   of California Civil Code section 1780(a)(19) because it (the EF SWISS

22   Immunity Clause) necessarily overrides each of the other unconscionable

First Amended Complaint for Injunctive Relief for Violation of the California
Unfair Competition Law and for Damages for Violation of the California Consumer
Legal Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-cv-00508-
GPC-BLM

1    clauses in the EF SWISS International Travel Contracts by having the

2    overall effect of putting EF SWISS in the position where, for example, it

3    could simply cancel tours for any reason or no reason and then keep all

4    Class' money while simultaneously dashing all the Class and its minor

5    children's hopes of travel with their classmates and teachers without any

6    consequences to EF SWISS other than possible damage to its business

7    reputation. Something which—as events have now shown—is of very little

8    importance to EF SWISS under the present circumstances.

9          67.    As a direct natural and proximate result of EF SWISS' insertion

10   of the EF SWISS Immunity Clause in the EF SWISS International Travel

11   Contracts, Class has suffered and continues to suffer actual harm by being

12   deprived of the full cash refunds it is otherwise entitled to given the lack of

13   any reasonable explanation by EF SWISS for its deducting non-contractual

14   liquidated damages of $1,000 to $500 from Class Members' money it has

15   previously had and received from Class on the strength of the fact it (EF

16   SWISS) is contractually free to unreasonably and in bad faith act any way it

17   wants to as per the EF SWISS Immunity Clause.

18         Wherefore Class prays judgment as follows:

19         1.    That the Class described herein be certified; that the Putative

20   Class Representative Plaintiffs, or some of them, be designated the named

21   class representative plaintiffs and that the Putative Class Representative

22   Plaintiffs' counsel be appointed Class counsel;

First Amended Complaint for Injunctive Relief for Violation of the California
Unfair Competition Law and for Damages for Violation of the California Consumer
Legal Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-cv-00508-
GPC-BLM

1    2.      For a preliminary injunction as described, *supra*;

2    3.      For declaratory relief as described, *supra*;

3    4.      For money damages in a sum of not less than five million

4   ($5,000,000) dollars and according to proof at trial;

5    5.      For punitive damages;

6    6.      For an award of either or both common fund and/or statutory

7   attorney fees;

8    7.      For such other and further relief as may seem just.

9   Dated: May 15, 2020                REALLAW PC
                                       MCGRANE PC
10

11                                     By: /s/ William McGrane
                                           William McGrane
12                                     Attorneys for Attorneys for Plaintiffs John
                                       Rochfort, Erica Sharar, Sara Adamski,
13                                     Rheannon Androckitis, Patricia Bonds, Melissa
                                       Cook, Melissa Douglas, Erin Hazelwood,
14                                     Daniella Holmes, Natalia Grabovsky, David
                                       Lucas, Tracey Madden, and Wendy
15                                     Stotsenburg on behalf of themselves and all
                                       other persons similarly situated
16

17

18

19

20

21

22

First Amended Complaint for Injunctive Relief for Violation of the California
Unfair Competition Law and for Damages for Violation of the California Consumer
Legal Remedies Act

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-cv-00508-
GPC-BLM

1

## <u>DEMAND FOR JURY TRIAL</u>

2

Plaintiff demands a trial by jury of all issues so triable pursuant to Rule

3

38 of the Federal Rules of Civil Procedure.

4

Dated: May 15, 2020

REALLAW PC
MCGRANE PC

5

6

By: /s/ William McGrane
William McGrane
Attorneys for Attorneys for Plaintiffs John
Rochfort, Erica Sharar, Sara Adamski,
Rheannon Androckitis, Patricia Bonds,
Melissa Cook, Melissa Douglas, Erin
Hazelwood, Daniella Holmes, Natalia
Grabovsky, David Lucas, Tracey Madden,
and Wendy Stotsenburg on behalf of
themselves and all other persons similarly
situated

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

1
Demand for Jury Trial

*Rochfort v. EF Institute for Cultural Exchange, Inc., et al.,*

*Case No. 3:20-cv-00508-GPC-BLM*

# EXHIBIT 1

# General Terms and Conditions

These Booking Conditions are valid for all EF tours departing after October 1, 2019, and are subject to change with or without notice. The most current Booking Conditions at the time of your departure will apply, which are available at eftours.com/bc. All tours are operated outside of the U.S. by EF Education First International, Ltd., Switzerland. EF Institute for Cultural Exchange, Inc. is a marketing service provider for that company and is referred herein together with EF Education First International, Ltd. as "EF."

## WHAT'S INCLUDED IN THE PROGRAM PRICE?
– $95 non-refundable deposit
– Round-trip airfare
– Accommodations in hotels with private bathrooms
– A Tour Director available 24 hours a day from when you arrive until you depart
– Breakfast and dinner daily in Europe. (For non-European destinations different meal plans may apply.)
– Sightseeing tours and excursions led by licensed local guides as specified
– Airport transfers and transportation between destination cities
– Transportation to all included activities
– Entrance fees and theater tickets as specified
– EF walking tours and Tour Director-led sightseeing as specified
– Cruises, trains, or ferries as specified
– 24-hour worldwide emergency service
– Support from EF representatives abroad
– Adult supplement (if applicable)
– Weekend supplement ($35 fee for any flight departing Friday, Saturday, or Sunday in either direction, if applicable)
– EF backpack and luggage tag for each tour

The above apply to all tours unless otherwise noted on the tour itinerary. If we ever fail to provide you with any of the above, we will refund you its value upon your return from the tour.

## What does the non-refundable deposit include?
All travelers must pay the non-refundable, non-transferable $95 deposit upon enrollment in order for the enrollment to be complete. After travel is completed on the first tour, repeat travelers will receive a $100 repeat traveler discount off of future tours.* (EF Explore America repeat travelers will receive a $50 repeat traveler discount off of future EF tours.) The $95 non-refundable deposit includes:
– EF's standard cancellation policy and Peace of Mind program as described on p. 18
– Processing services by EF staff
– Eligibility for discounts on other EF programs

*Repeat travelers are paying travelers who traveled beginning in 2003. Travelers who cancel their tour prior to traveling are not eligible for a repeat traveler discount. The repeat traveler discount is non-refundable and non-transferable.

## WHAT'S NOT INCLUDED IN THE PRICE?
– Rooming supplement (if applicable)
– Optional excursions (except where indicated)
– Global Travel Protection plan (except where indicated)
– Beverages and lunches (except where indicated)
– Transportation to free-time activities
– Customary gratuities (for your Tour Director, bus drivers, and local guides)
– Porterage
– Any applicable baggage-handling fees imposed by the airlines (see eftours.com/baggage for complete details)
– Expenses caused by airline rescheduling, cancellations, or delays caused by the airlines, bad weather, or events beyond EF's control (see next page for details)
– Passport, visa, and reciprocity fees or any other fees associated with entry to a specific destination

## GROUP TRAVEL
### How does group travel work?
We believe that all students should have the opportunity to travel, which means we

do everything we can to keep our program prices the lowest in the industry without sacrificing quality. One of the ways we do that is by combining groups to fill a tour bus so that all travelers help cover the costs of the bus, the Tour Director, local guides, etc. Consolidating groups also allows travelers to meet students from other schools, although groups may not be of the same age level.

Therefore, in order for everyone to travel for the lowest price possible, group travel requires some flexibility. Each group submits its preferred tour choices and travel dates, and then we book all of the groups with the same requested tours on one specific departure date. Because EF is the largest student travel provider, it's rare that groups do not travel on their first-choice tour. However, on occasion, we may need to book your group on a second-choice tour. If we fail to offer a comparable tour, travelers may opt to receive a full refund. EF strives to keep departure dates within two days of the requested date for tours departing October through April and within four days of the requested date for tours departing May through September. Your final tour itinerary and travel dates will be confirmed approximately two months prior to departure.

### Anything else I need to know about my itinerary?
Based on your travel dates, there may be times when it becomes necessary to modify your itinerary. Sometimes this involves changing the order in which cities are visited, altering your length of stay in a city or country, or using an alternate airport. On certain days, especially holidays, some tour inclusions may be unavailable. In such cases, we will substitute different inclusions or provide a refund after the tour. Tours are designed for students, as reflected in the pacing, accommodations, and other aspects of the tour.

## PRIVATE GROUPS
### What if my group wants to travel on our own without being consolidated?
If you want the privacy of your own tour bus and Tour Director, you can choose to travel as a private group. This option is available for an additional fee, which varies based on the final number of paying travelers. If your group fills a standard-size tour bus, the private group option is free. The itinerary may not be modified while on tour (i.e. you do not have the tour bus at your disposal); however, you are able to make certain tour modifications prior to the tour departure. Although your base itinerary will include only your group, you may be consolidated with others during optional excursions. Also, due to flight and hotel availability, we require the same departure date flexibility as described above. Please let EF know prior to your first enrollment if you would like to be a private group.

### What if my group is traveling on a customized tour?
If your group is traveling on a customized tour, you will automatically be traveling as a private group. The tour price for your customized tour can fluctuate based on the group size and will be finalized based on the number of paying travelers at the time of departure.

## ENROLLMENT
All Enrollment Forms must be received at EF by at least 110 days prior to departure. Travelers should provide complete first, middle, and last names, and dates of birth as they appear (or will appear) on their passports.

### What is the cost of a name correction?
Any corrections to match passport names made after 110 days prior to departure require that we change the flight reservation, resulting in a minimum fee of $200 per airline up to the cost of a new published fare ticket. This may also result in a different flight itinerary from the entire group. Travelers who have not yet applied for a passport should provide their full name and date of birth as they appear on their birth certificate.

### How do travelers enroll?
Enrollment Forms and payment can be submitted to EF in any of the following ways:
– Online: eftours.com/enroll
– Phone: 800-665-5364
– Mail:
  EF Educational Tours
  EF Center Boston
  Two Education Circle
  Cambridge, MA 02141

For your convenience, travelers are automatically enrolled in paperless billing. Travelers who prefer to receive invoices by mail may request this by logging into account at eftours.com or by calling 800-665-5364.

### Can a traveler enroll on a waitlist if the tour is full?
Upon the discretion of the Group Leader, a waitlist may be offered for full tours. The $95 non-refundable deposit is required for waitlist enrollments. If space becomes available on the tour and the applicant chooses to enroll, EF's payment plan and cancellation policies apply immediately. If space is not available by 14 days prior to departure or if the applicant cancels from the waitlist, the $95 deposit will be refunded.

### Can children under 11 go on tour?
We do not allow children under the age of 6 to travel with us. Travelers ages 6-10 must have an adult chaperone other than the Group Leader and will have to room with that chaperone. Travelers may choose to stay in a family room (a room with two twin beds and a cot) or in a twin (a room with two beds). Applicable fees will apply.

### Can adults go on tour?
EF's published program prices are based on student rates for transportation, admissions, accommodations, etc. We welcome adults (those age 20 and older, including those who will turn 20 while on tour) but have to charge a per-person flat fee supplement of $100 plus $50 per night of the tour to cover the difference between student and adult rates. Adults will pay an additional $40 per night for the sea portion of their tour on overnight ferries and cruises, where applicable. Please see next page for information on adult rooming. Groups comprised of a majority of adults must select the private group option. All adult travelers will be required to complete a background check through a third party company prior to traveling. EF reserves the right to cancel any traveler if, in EF's sole discretion, it determines the results pose a risk to the group's safety or wellbeing.

### LATE ENROLLMENTS
**Can a traveler enroll after 110 days prior to departure?**
Yes. A traveler may submit a late enrollment request 109 days or fewer prior to departure. The traveler must enroll on the tour, pay a non-refundable $145 late enrollment fee, and make full payment of the current program fee. The traveler will be placed on a waiting list while we check bus, flight, and hotel availability. The traveler is responsible for any additional charges that may apply. We may also offer an alternate flight to meet up with the tour or the option of arranging your own flight and buying the land-only portion of the tour.

If we are unable to place the traveler on a tour or the traveler does not wish to pay the additional charges, the traveler may cancel their enrollment request and receive a full refund.

### PASSPORTS AND VISAS
**Who is responsible for getting travelers' passports, visas, and other travel documents?**
Each traveler must obtain a passport and any applicable visas or other travel documents prior to departure. For all tours, we will need passport information by 110 days prior to departure. If a traveler is unable to obtain these travel documents, our standard cancellation policy will apply (see first column on p. 18). Please be sure that passports are valid for at least six months after the tour ends. Visit the U.S. Department of State at www.travel.state.gov for further information. Non-U.S. citizens will need to contact the embassy or consulate of their destination countries to ensure they meet specific entry requirements. Remember to check the itinerary carefully for all countries that will be visited (including countries visited in transit).

### GLOBAL TRAVEL PROTECTION PLAN
**Can I help protect my investment?**
Travelers can help protect their investment from the unexpected with the offered Global Travel Protection plan. Designed specifically with EF travelers in mind, this plan provides coverage for travelers, including pre-departure trip cancellation protection as well as medical expense coverage during their tour (among several post-departure coverages). Additionally, if you are traveling on a Service Learning Tour operated by Me to We Trips, you are required to have traveler's insurance. If purchased, the Global Travel Protection plan includes travel insurance coverages that will satisfy this requirement. Additional information, prepared by Specialty Insurance Solutions (SIS), is available at: http://sis-inc.biz/efeducationaltours. The Global Travel Protection plan becomes non-refundable after any of the following occur: when you depart on your tour, when you file a claim, or 10 days after receipt.

### FLIGHT INFORMATION
**Which airlines are used by EF?**
EF reserves seats with major airlines, including Aer Lingus, Air Canada, Air France, Air New Zealand, Alitalia, American, British Airways, Copa Airlines, Delta, Iberia, Icelandair, KLM, Lan Airlines, Lufthansa, Qantas, South African Airways, Swiss, United, Virgin Atlantic Airways, and other U.S. and international carriers. Our contracts do not allow upgrades, stopovers, or the accrual of frequent flier miles.

**What will my flights be like?**
We always do our best to provide the most direct route to your destination city. However, due to available flight routings, we cannot guarantee non-stop or direct flights. Sometimes, groups may travel on an overnight red-eye flight, departing the evening before the tour is scheduled to begin. In rare cases, groups may have a domestic and/or international overnight, layover, and/or bus transfer. Based on seat availability and the size of the plane, we may not be able to accommodate all members of a group on the same flight, in which case the Group Leader will determine on which flight itinerary each traveler will travel. In such instances that a traveler is not satisfied with their flight assignment, standard cancellation fees apply. We are not able to pre-assign seating. Seat assignments will be provided upon check-in. Depending on your group's size, travelers may or may not sit together. Some countries may require aircraft insecticide treatment for inbound foreign flights. A list of such countries is available at eftours.com/insecticide.

**Do I have to travel on all legs of my flight itinerary?**
You must travel on all legs of your itinerary. If you do not travel on a portion of your flights, the remaining portions will be cancelled. You will be responsible for purchasing a new ticket as well as for any service fees charged by the airlines.

**What happens if my flight is delayed?**
EF is not responsible for airline schedule changes or mechanical, weather, or capacity-related flight delays; however, visit eftours.com/protection for benefits offered in the Global Travel Protection plan.

**Are any airports interchangeable?**
Flights to and from these destinations may originate/end at any of the airports in that vicinity. On occasion, the tour may return to a different airport than the one you departed from.
– Chicago: O'Hare or Midway
– Houston: George Bush Intercontinental or Hobby
– Miami: Fort Lauderdale or Miami
– New York: LaGuardia, JFK, or Newark
– Washington, D.C./Baltimore: BWI, Dulles, or Ronald Reagan National
– Ireland: Cork or Shannon
– Italy: Milan or Venice
– Scotland: Edinburgh or Glasgow
– San Francisco: Oakland, San Jose or San Francisco
– Dallas: Dallas/Fort Worth or Dallas Love Field

**Are there flight restrictions for travelers under 18?**
Anyone younger than 18 years old traveling apart from the group without an adult companion must contact each airline on the minor's itinerary and may need to register as an unaccompanied minor per the airlines' policies. Some airlines will not allow minors under 16 years of age to travel without an adult companion. Any resulting fees will be assessed by the airlines and are the responsibility of the traveler. Additionally, travelers younger than 18 years old are not permitted to travel land-only unless accompanied by an adult traveling on the tour.

## SPECIAL TRAVEL REQUESTS

EF is happy to provide stay-ahead/stay-behind options, alternate departure airports, and land-only tours for individual travelers or the whole group. If you have requested special travel arrangements, EF cannot guarantee that you will fly with your group in either direction.

### What if the whole group wants to do a stay-ahead or stay-behind?

Where possible, EF will provide altered flight and/or land arrangements for a group of at least six paying travelers plus the Group Leader. Each traveler will have to pay any additional air and/or land costs. The Group Leader should submit one request for the whole group, which needs to be received prior to the first enrollment.

### What if only one traveler has a special travel request?

Individual special travel requests should be submitted online at eftours.com by 110 days prior to departure. Please keep in mind that you should not make any actual arrangements—such as booking a flight or hotel—until final your itinerary and departure date have been finalized (around 60 days prior to departure). A $150 service fee plus any additional air and/or land costs will be charged.

### What are the types of individual special travel requests?

– Individual stay-ahead/stay-behind option: Where possible, EF will provide altered flight arrangements, according to a traveler's request. Travelers are responsible for making their own arrangements to and from the hotel or airport as well as all land arrangements pertaining to their individual itinerary.
– Alternate departure airports: Program prices are based on group departures. If an individual chooses to fly out of a different airport than the group, the program price of the alternate airport will apply. Travelers must depart from and return to the same domestic airport.
– Land-only tours: On certain tours, travelers have the option to make their own flight arrangements and join the tour at the first hotel on the itinerary. Travelers are responsible for making their own arrangements to and from the hotel or airport. In this case, the program price will be reduced depending on the length and destination of the tour. EF is not responsible for any travel-related delays or inconveniences for land-only travelers. Additionally, travelers younger than 18 years old are not permitted to travel land-only unless accompanied by an adult traveling on the tour.

## EXCURSIONS

### What are excursions?

EF offers these activities in addition to what is already included on the itinerary. Most Group Leaders choose to add excursions to all traveler accounts.

### When should I purchase excursions?

To secure a discounted price, most excursions need to be purchased by 50 days prior to departure (70 days for Versailles). Some excursions may be purchased on tour, though at an increased price.

### Are excursions refundable?

If EF cancels an excursion (due to low enrollment, for example), travelers will receive a full refund for the excursion after returning home from tour. To receive a refund for an excursion that you simply no longer wish to be enrolled in, you must let us know by 50 days prior to departure or no refund will be given.

## ROOMING

EF handles final rooming assignments for all travelers. Please ensure that all rooming requests are submitted by 110 days prior to departure.

### How are students roomed?

Students will room in triples or quads with others of the same sex from the entire tour group. This means that students from different schools may room together. EF uses hotels with rooms that contain two double beds (beds for two people). Two students are expected to share each bed.

### Can students request a twin room?

Students may request twin accommodations (a hotel room with two single beds) by submitting the name of their roommate. The following additional fees will apply:
– $50 per hotel night per student
– $90 per ferry or cruise night per student
(Please note: Twin accommodations are not available on overnight trains.)

### How are adults roomed?

Adults are placed in twin accommodations (a hotel room with two single beds) with another adult of the same sex from the entire tour group, unless the name of a roommate has been provided. This will mean that adults from different schools/organizations may room together.

### Can adults request a room with a double bed?

Adults can request double-bed accommodations (a room with one bed for two people) by providing EF with the name of their roommate by 110 days prior to departure.

### Can adults request a single room?

Adults can request a single room for an additional $40 per hotel, cruise, or ferry night. This fee is in addition to the standard adult supplement fees covered on the previous page. Single rooms are not available on overnight trains.

### What are the sleeping arrangements on trains?

Overnight trains provide couchette sleeping berths or sessels (recliners). The couchettes contain up to six fold-out beds that come down from the wall; on rare occasions, these compartments may not be exclusive to EF travelers and may be mixed gender. Single rooms and private bathrooms are not available on overnight trains.

## MISCELLANEOUS

### When does the tour officially start and end?

Each tour begins with the take-off from the departure airport and ends when the flight lands at the return airport. For those making their own flight arrangements, the tour begins upon arrival at the first EF hotel and ends upon departure from the last EF hotel, according to the itinerary. The official length of an EF tour does not include stay-ahead, stay-behind, or any optional periods or activities when travelers are not escorted by a Tour Director.

### What happens if EF has to cancel or modify a tour?

EF retains the right to cancel, modify, or delay the tour as a result of unforeseeable events that are beyond EF's reasonable control, including but not limited to, acts of God, war (whether declared or undeclared), terrorist activities or threats of terrorists activities, instability in a destination country, incidents of violence, public health issues or quarantine or threats of public health issues, substantial currency fluctuations, strikes, government restrictions, fire or severe weather conditions, or any other reason that makes it impossible or commercially unreasonable in the sole opinion of EF to conduct the tour as originally contracted. If EF cancels the tour for any such reason, travelers will receive an EF future travel voucher for all monies paid, less the $95 non-refundable deposit and any additional non-refundable fees. Cancellation by EF for causes described in this section shall not be a violation of its obligations to any traveler.

### What if a refund is due?

Refunds for overpayments will be issued upon written request and after the most recent payment has been in the traveler's account for 21 days. Refunds will be issued in the name that appears on the traveler's account. All refund checks are mailed 4-6 weeks after the request has been processed. There will be a non-refundable $35 stop-payment fee for lost refund checks.

### What about lost belongings?

EF is not responsible for loss of passports, airline tickets, or other documents, or for loss of or damage to luggage or any other passenger belongings. In the case of lost travel documents, the traveler is solely responsible for meeting the airline's requirements (both logistical and financial) for ticket replacement.

### What about travelers with food allergies?

EF recognizes that some travelers may have severe food allergies. We will do our best to ensure that our suppliers are informed of the situation, but we cannot guarantee that all requests will be accommodated. Travelers are responsible for making their own arrangements for all in-flight meals.

### What items are prohibited from tour?

For the safety and well-being of all travelers, no firearms or any other weapons are permitted on tour except as required by law.

**What if my tour dates do not fall in the range covered by these Booking Conditions?**

Visit eftours.com/bc for the most recent version of the latest travel year's Booking Conditions. The most current Booking Conditions will apply.

### PERSONAL DATA

EF will process your personal data in compliance with applicable data protection legislation for the purposes of completing your enrollment, customer service, the purchase of an offered travel protection plan, and providing you with the products and services related to your tour. This may entail sharing your personal data with corporate affiliates, claims handlers, insurance providers, and other business partners both within and outside the U.S., including to and within the EEA/Switzerland. We have put appropriate safeguards in place for such transfers of your personal data, including the standard data protection clauses adopted by the European Commission. EF may also use your personal data, combined with data from third parties, to market products and services based on your interests, including by email and SMS/text. You may contact EF at any time to unsubscribe from any direct marketing purposes.

We will only keep your personal data for as long as it is necessary for the purposes for which it has been collected or in accordance with time limits stipulated by law and good market practice, unless further retention is necessary for compliance with a legal obligation or for the establishment, exercise or defense of legal claims. We will keep your personal data for marketing purposes until you withdraw your consent.

If you have questions about the processing or use of your personal data, would like to have a copy of the information EF holds about you, or have inaccurate personal data corrected or erased, please contact customer service at 800-665-5364.

### PROTECTION FOR TRAVELERS' PAYMENTS

Traveler's tour money is protected in the unlikely event of EF bankruptcy, insolvency, or cessation of business under our participation in the United States Tour Operators Association (USTOA) $1 Million Travelers Assistance Program. For program details and a list of its affiliates, contact USTOA by mail at 275 Madison Avenue, Suite 2014, NY, NY 10016, by email at information@ustoa.com, or online at USTOA.com.

### TERMS AND PROVISIONS

The terms and provisions of these Booking Conditions supersede any other warranties, representations, terms, or conditions, unless they are expressly stated within a Booking Conditions Addendum or in a letter signed by an EF officer. While EF makes every effort to ensure the accuracy of its publications, it cannot be held responsible for typographical or printing errors (including prices).

The tour operator for your trip is EF Education First International, Ltd., Selnaustrasse 30, 8001 Zurich, Switzerland, organization number CHE-109.874.655, VAT number CHE-116.325.678 MWST. EF Institute for Cultural Exchange, Inc. is an affiliate of EF Education First International, Ltd. and acts only as a marketing services provider for that company. EF Institute for Cultural Exchange Inc. is not an agent of EF Education First International, Ltd. and does not provide any goods or services for your trip. The services provided are tax-exempt with credit in accordance with Swiss Federal Law with regard to VAT Article #23.

## Payment Plan Terms and Conditions

Should you choose the Automatic Payment Plan or Manual Payment Plan, the following Terms and Conditions apply.

### AUTOMATIC PAYMENT PLAN

– Travelers must select a payment method of either direct debit from a checking account or an ATM/debit card (card must display the Visa or MasterCard logo).
– EF must have the checking account or card holder signature on the Enrollment Form, electronic signature, or verbal authorization indicating agreement to EF's Automatic Payment Plan Terms and Conditions before the plan is activated.
– A minimum of three months of automated payments are required. Travelers who are not eligible for the Automatic Payment Plan must pay in full upon enrollment or enroll in the Manual Payment Plan.

– Travelers must provide a valid email address and pay the tour's $95 non-refundable deposit before the plan is activated.
– Travelers who choose monthly payments must choose a date between the 1st and 26th of the month on which their account will be automatically debited.
– Travelers who choose bi-weekly payments must choose a weekday on which their account will be automatically debited.
– Due to weekends and holidays, EF reserves the right to debit the travelers' account up to three days after the scheduled date.
– The Automatic Payment Plan amounts are subject to change if tour items or payments (other than the Automatic Payment Plan) are added or removed in excess of $20. All other items or payments totaling $20 or less that are added or removed will only be reflected in the final payment.
– After the Automatic Payment Plan's final scheduled payment, any additional items are due at time of purchase. Payments will no longer be automatically deducted.
– A non-refundable $35 fee will be assessed each time a payment is returned or declined. In these cases, the plan will be recalculated to have the missed payment redistributed across the remaining schedule. EF reserves the right to withdraw travelers from the plan for returns or declines in two consecutive payments. Should the final payment be returned or declined, travelers will automatically be withdrawn from the plan.
– Travelers are not charged late fees while enrolled in the Automatic Payment Plan. If the traveler opts to withdraw from the plan or is withdrawn by EF, the traveler will be enrolled in the Manual Payment Plan, and the $50 plan fee will be assessed.
– All of the above terms and conditions of the Automatic Payment Plan also apply to travelers on EF Tours for Girl Scouts tours.

### MANUAL PAYMENT PLAN

– If travelers do not pay in full upon enrollment or choose the Automatic Payment Plan, they will be enrolled in the Manual Payment Plan and a non-refundable $50 plan fee will be applied.
– Based on date of enrollment, travelers will be invoiced up to three payments. The first payment of $500 is due 30 days after enrollment. The second payment of $500 is due 90 days after enrollment. The remaining balance is due 110 days prior to departure.
– Based on date of enrollment, travelers on an EF Tours for Girl Scouts tour will be invoiced up to four payments. The deposit of $95 is due at the time of enrollment. The first payment of $300 is due 60 days after enrollment. The second payment of $500 is due 14 months prior to departure. The third payment of $500 is due 9 months prior to departure. The remaining balance is due 110 days prior to departure.
– A late fee of $95 will be assessed for any missed payment. All late fees are non-refundable.
– Travelers can pay with ATM/debit card, credit card (card must display the Visa or MasterCard logo), or personal checks.
– Payments made by personal check must be submitted with the traveler's name and account number.
– A non-refundable $35 fee will be assessed each time a payment is returned or declined.
– Travelers are responsible for making on-time payments even if an invoice is not received.
– All payment due dates refer to the dates by which each payment must be received by EF.
– EF reserves the right to cancel the traveler's reservation if any payment is past due by 30 days (or 15 days after final payment).
– Payment for the Global Travel Protection plan is due at time of purchase, and the plan will not be purchased until payment is received.

## Paperless Billing Terms and Conditions

For travelers enrolled in Paperless Billing, the following Terms and Conditions apply:

– Travelers will receive electronic invoices in connection with all information related to their EF account, including tour invoices, and other notices that are available in electronic format. Travelers understand this means that, once enrolled, they will not receive paper copies. Invoice reminders will be sent to the billing e-mail address that travelers provide on their enrollment form. Travelers may view and print invoices by logging into their account at eftours.com.

– EF is not responsible for any delay or failure to deliver any invoice, and travelers understand that nothing in these Terms and Conditions relieves obligation to pay any invoice.

– Travelers may elect not to receive electronic invoices and change to billing by US mail at any time by logging into account at eftours.com or by calling 800-665-5364.

– To the extent permitted by law, paperless billing is provided "as is" with faults and without warranties of any kind, either expressed or implied. Travelers assume all responsibility and risk for use of paperless billing. EF does not warrant that the information, processes, or services will be uninterrupted, or bug or error free.

## Cancellation Policy

The cancellation policies outlined below take into consideration the costs EF incurs long before groups ever depart. Notice of cancellation from an EF tour will only be accepted from the traveler, his or her legal guardian, or the Group Leader. The date of cancellation will be determined by the date on which EF receives notice. Cancellation refunds can only be made to the person whose name appears on the account. In order to qualify for refunds in accordance with EF's standard cancellation policy, all payments must be received on time.

**EF's standard cancellation policy\***

– *150 days or more prior to departure:* Full refund less the $95 non-refundable deposit, all non-refundable fees, Global Travel Protection, and a $300 cancellation fee.

– *149 to 110 days prior to departure:*  Full refund less the $95 non-refundable deposit, all non-refundable fees, Global Travel Protection, and a $500 cancellation fee.

– *109 to 45 days prior to departure:* Full refund less the $95 non-refundable deposit, all non-refundable fees, Global Travel Protection, and 50% of the program price.

– *44 days or less prior to departure:* No refund will be issued.

\*Travelers who purchase a Global Travel Protection plan have the opportunity to cancel the trip until 60 days prior to departure due to reasons not covered by the insurance underwritten by United States Fire Insurance Company and have the option to rebook to another EF Educational Tour within 30 days of such cancellation. Traveler is responsible for finding a new tour, and final placement is based on availability. Such tour needs to take place within 180 days from cancellation, and any difference in price will be covered by the traveler (non-refundable fees from the original tour will not be put toward the rebooked tour). This benefit is not an insurance provided by United States Fire Insurance Company.

**Cancellation with replacement\*\***

– 150 days or more prior to departure: Full refund less the $95 non-refundable deposit, all non-refundable fees, and Global Travel Protection.

– 149 to 110 days prior to departure: Full refund less the $95 non-refundable deposit, all non-refundable fees, Global Travel Protection, and a $100 substitution fee.

– 109 days or less prior to departure: Replacements can no longer be accepted and EF's standard cancellation policy will apply.

\*\* Cancellation with replacement refers to a traveler who cancels but finds a person to replace him or her for the same program. The replacement's Enrollment Form must be submitted at the same time as the notification of cancellation.

**Group Leader cancellation**

A Group Leader must accompany travelers on every tour. If a Group Leader cancels for any reason, he or she will be asked to assign a new Group Leader. Any travelers who cancel at this point and choose not to travel with their replacement Group Leader will be treated as standard cancellations. If no replacement Group Leader is found, the affected travelers will need to cancel to be eligible for EF's standard cancellation policy. Those travelers interested in being placed with a new tour group should contact EF at 800-665-5364. If we cannot find a new tour for these travelers, EF's standard cancellation policy will apply.

## EF's Peace of Mind Program

We understand that plans can change due to unforeseen circumstances. EF provides an exclusive Peace of Mind program to account for such situations. This program is automatically included for all travelers and can be enacted at the group level for any reason, including terrorism or other world events. Your Group Leader may choose from the following options:

**45 days or more prior to departure**

– Change the travel dates of your group's current tour

– Work with EF to modify your group's current tour or find a new tour

– Cancel your tour and all travelers will receive a transferrable travel voucher

**44 days or less prior to departure**

If any location(s) included in your group's tour itinerary is designated as a Travel Advisory Level 3 or 4  by the U.S. Department of State, your Group Leader may still choose any option from the section above.

**EF's Peace of Mind program Terms and Conditions**

Benefits of the Peace of Mind program are only available to the entire group and not to individual travelers. Travelers missing any payment deadlines must pay any incurred late fees to qualify for this program. Revised tours must fall within the date range that these Booking Conditions are valid. If the revised tour has a higher price than the original tour, travelers will be required to pay the difference as a condition of traveling on the revised tour. If EF cannot accommodate a revised tour request and/or the group decides not to travel on the original tour, then the group may opt for travel vouchers. If the group does not travel on the original tour, travel on a revised tour, or receive a future travel voucher, standard cancellation fees will apply. Travelers cancelling from a revised tour will be charged a cancellation fee based on the date that the original tour was revised or the date of cancellation from the revised tour, whichever is higher. EF will make every effort to accommodate revised tour requests. Travel vouchers will be issued in the amount of all monies paid by a traveler for the original tour less the $95 non-refundable deposit and any other non-refundable fees. Travel vouchers are valid for the current and following travel year. Travel vouchers are transferrable at the face value of the voucher to members of the traveler's immediate family or to students and faculty of the traveler's school. The future travel voucher is not a merchandise credit or a gift certificate and may not be redeemed for cash.

© EF Education First International, Ltd. 2019 | BC06262019

# Release and Agreement

**I (or parent or legal guardian if enrollee is under 18 or a minor under any other applicable law) have read, understand and agree to the following in exchange for enrollment on an EF Educational Tour:**

1. I acknowledge and understand that my tour is operated outside of the U.S. by EF Education First International, Ltd., Switzerland, and that EF Institute for Cultural Exchange, Inc. acts only as a marketing service provider for that company. If I am participating in a Service Learning Tour, I acknowledge and understand that a portion of my tour may be operated by Me to We Trips, Ltd., a Canadian entity, in collaboration with Free The Children.

2. EF Institute for Cultural Exchange, Inc., EF Education First International, Ltd., and their affiliated companies, partners, and any companies acting on their behalf, along with their officers, directors, employees, agents, and authorized representatives (collectively referred to herein as "EF") do not own or operate any entity which is to or does provide goods or services for my program, including, for example, hotels; arrangements for, ownership of, or control over houses, apartments, or other lodging facilities; tour directors; airline, vessel, bus, or other transportation companies; local ground operators; visa processing services; providers or organizers of optional excursions; or food service or entertainment providers; etc. I acknowledge that all such persons and entities, specifically the Tour Director assigned to my tour, are independent contractors and not employees or agents of EF. As a result, EF is not liable for any negligent or willful act or failure to act of any such person or entity or of any third party.

3. Without limitation, EF and/or Me to We Trips, Ltd. in collaboration with Free The Children and its affiliated companies, partners, any companies acting on its behalf, each of their directors, officers, employees, volunteers, sponsors, independent contractors, agents, and authorized representatives (together referred to as "MTW") are not responsible for any injury, loss or damage to person or property, death, delay, or inconvenience in connection with the provision of any goods or services occasioned by or resulting from, but not limited to, acts of God; force majeure; acts of government; acts of war or civil unrest; insurrection or revolt; strikes or other labor activities; criminal, terrorist, or threatened terrorist activities of any kind; overbooking or downgrading of accommodations; structural or other defective conditions in houses, apartments, or other lodging facilities (or in any heating, plumbing, electrical, or structural problem therein); mechanical or other failure of airplanes or other means of transportation or for any failure of any transportation mechanism to arrive or depart timely or safely; dangers associated with or bites from animals, insects, or pests; sanitation problems; food poisoning; epidemics or the threat thereof; disease; lack of access to or quality of medical care; difficulty in evacuation in case of a medical or other emergency; or any negligent or willful act or failure to act of any third party or for any other cause beyond the direct control of EF or MTW.

4. I agree to release EF and my school, my school district, my school board, MTW, my Group Leader, and Tour Director (collectively, the "Released Parties") from, and agree not to sue the Released Parties for, any and all claims of any nature related in any manner to my participation in an EF-sponsored tour or a Service Learning Tour, including, but not limited to, claims for negligence, breach of contract, breach of express or implied warranties, negligence or wrongful death, or any statutorily based claim. I hereby unconditionally and unequivocally waive any and all claims and demands for all damages, losses, costs and expenses of any nature whatsoever (including attorneys' fees) on account of or arising out of any and all personal injury, death, bodily injury, mental anguish, emotional distress, or property or other damage that I may suffer from any cause whatsoever related in any way to my participation in any EF-sponsored tour or a Service Learning Tour.

5. I understand that travel in other nations is not similar to travel within the United States. Travel outside of the United States can involve inconvenience and risk, including, but not limited to, forces of nature, geographic and climatic conditions, different hygienic standards, infrastructure problems (including road maintenance, transportation delays and accommodation conditions), civil unrest, vandalism, crime, political instability, and terrorism. Medical services or facilities may not be readily available or available at all during all or part of a program and, if available, may not be equal to standards in the participant's home country. I understand that a Service Learning Tour is a physically demanding excursion in a developing country, and I knowingly assume the risks of such an excursion. I further understand that different parts of the world present unique health, disease, and safety concerns, and I agree to review any specific risks related to my destination by visiting the Centers for Disease Control and Prevention's Traveler's Health website at www.cdc.gov/travel and the State Department's International Travel website at www.state.gov/travel. I assume all risk of bodily injury, death, emotional trauma, property damage, inconvenience, and/or loss resulting from negligence or any other acts of any and all persons or entities, however caused, including, but not limited to, those risks mentioned above. It is my intention fully to assume all of the risks of travel and participation in the program and to release the Released Parties from any and all liabilities to the maximum extent permitted by law.

6. I further agree to release the Released Parties from any and all decisions to cancel, modify, or delay the tour as a result of unforeseeable events that are beyond the reasonable control of EF or MTW or which become necessary or advisable so as to increase the quality of the tour.

7. I agree that this Release applies to and binds myself and my minor child enrolling on tour (if applicable) along with my personal representatives, executors, heirs, and family.

8. In addition, EF and MTW shall have no responsibility for me whatsoever when I am absent from an EF- or MTW-supervised activity or for non-supervised activities, such as visits to friends or relatives or during stay-ahead/stay-behind option periods or any other optional period or activity when not escorted by a Tour Director.

9. My tour begins with the takeoff from the EF departure airport and ends upon completion of the flight back to the origination (or other arrival) airport.

10. The air carrier's liability for loss of or damage to baggage or property, or for death or injury to person, is subject to and limited by the airlines' contract of carriage, its tariff, the Montreal Convention or Warsaw Convention and their amendments or both.

11. EF or my Group Leader reserves the right to refuse or cancel my registration at its sole discretion. In such event, standard cancellation policies as outlined in the Booking Conditions apply.

12. I agree to abide by EF's and MTW's regulations and the directions of my Group Leader, my Tour Director, and EF's or MTW's personnel during my tour. Failure to do so may result in my Group Leader or EF terminating me from the tour immediately. I understand that to disobey such rules or directions is to waive the right to a refund of any part of my program price, and that my Group Leader or EF may then send me home at my own expense.

13. I agree to abide by all local laws when abroad. I understand that if I abuse or disobey such laws, even unintentionally, I waive my right to a refund of any part of the program price, and my Group Leader or EF may send me home at my own expense. I also understand that, should local authorities be involved, I will be subject to the laws of the country I am visiting.

14. If I become ill or incapacitated, EF, MTW, and their employees, or my Group Leader, may take any action they deem necessary for my safety and wellbeing, including notifying parents/guardians and/or securing medical treatment (at my own expense) and transporting me home. EF retains the right, in its sole discretion, to contact the traveler's parents/guardians with regard to health issues or any matter whatsoever that relates to the traveler's tour. These rights transcend any and all privacy regulations that may apply. In the event of a medical emergency, EF or MTW will attempt to cause appropriate treatment to be administered, and the traveler authorizes EF or MTW to do so. EF or MTW, however, make no warranty that it will be able to cause effective (or any) emergency treatment to be administered or to be timely administered.

15. I have made the choice to travel with the teacher/Group Leader organizing my group. I understand that this choice is not the responsibility of EF. I understand that my Group Leader is able to make decisions on my behalf, including but not limited to changing the group's requested tour or travel date and requiring that I purchase items such as the Global Travel Protection plan and optional excursions. I understand that a Group Leader must accompany me on tour. If my Group Leader cancels for any reason, EF will ask him or her to assign a new Group Leader. If I cancel at this point and choose not to travel with the replacement Group Leader, I will be treated as a standard cancellation. If no replacement Group Leader can be found, I will need to cancel and EF's standard cancellation policy will apply. I may also request that EF place me with a new tour group. If EF cannot find a new tour group for me, EF's standard cancellation policy will apply.

16. If I will be age 20 or older at any time during my tour, I acknowledge that EF will conduct a criminal background check ("CBC") as a pre-condition to travel. If such a traveler refuses to consent to the CBC, it will be deemed a cancellation and EF's standard cancellation policy will apply.

17. This Release and Agreement and EF's Booking Conditions constitute the entire agreement between EF and me with reference to the subject matter herein, and I do not rely upon any promises, inducements, marketing materials, or agreements not herein, including, but not limited to, any oral statements made to me by any agents or employees of EF or by my school or Group Leader. This agreement may be amended or modified only in a writing, signed by EF. The waiver by EF of any provision of this agreement shall in no way affect the remaining provisions of this agreement, and this agreement shall be interpreted as if such clause or provision were not contained herein.

18. This agreement and performance hereunder shall be governed in all respects by the substantive laws of the Commonwealth of Massachusetts. In the event of any claim, dispute, or proceeding arising out of my relationship with EF or MTW, or any claim which arises between the Parties, whether or not related to this agreement, the literature for the trip or the trip itself, it shall be resolved solely in courts of the Commonwealth of Massachusetts and/or the United States District Court for the District of Massachusetts.

19. For travelers in Utah only: This tour is not sponsored by any public school, public school district, or other public entity and is operated and organized by a privately owned company.

20. EF and MTW may use any film or digital likeness taken of me and any of my comments while on an EF tour as well as any project work (including, but not limited to, online learning programs offered by EF) for future publicity without compensation to me and also use my contact information for future EF promotions. I have read and agreed to the Terms of Use and Privacy Policy outlined at eftours.com/legal-notices and I consent to EF's processing of my personal data.

21. I have read and agreed to the Terms of Use and Privacy Policy outlined at eftours.com/legal-notices, and I consent to EF's processing of my personal data as set forth on page 17.

## LIMITED POWER OF ATTORNEY

**For parents/guardians of travelers under the age of 18 or a minor under any applicable law**
The tour itinerary may include certain activities (such as whitewater rafting in Costa Rica) that may require the Group Leader to sign a release on behalf of the travelers (who are minors and cannot sign for themselves) in order to allow participation. This Limited Power of Attorney allows the Group Leader to execute these documents on your behalf should the need arise. Your execution of this Limited Power of Attorney is voluntary, and if you choose not to grant this Limited Power of Attorney, your child may still participate in the tour but may not be able to participate in some tour activities. With regard to said authorities:

1. I understand and agree that my child, with my permission, has voluntarily chosen to participate in the activities, and we assume all dangers and risks associated with the activities.

2. I do hereby delegate to the Group Leader a "Limited Power of Attorney" and full authority to sign any documents, including, but not limited to, liability releases, permission slips, waivers, and/or any other type of participation agreement required by the operators of any activity for participation. By signing the EF Educational Tours Enrollment Form, I understand and agree to the above.

# EF's Rules of the Road

**WHEN YOU ENROLL ON YOUR TOUR**
You agree to EF's Rules of the Road, which can also be found on your personalized website. If you do not conform to these regulations or any specific rules set by your Group Leader, you risk dismissal from the tour, returning home at your expense with no refund for the missed tour portion. Decisions regarding tour dismissal are up to EF and/or your Group Leader.

If you are traveling on a Service Learning Tour operated by Me to We Ltd., you must also adhere to Me to We's Rules of the Road. Please visit eftours.com/mtwrules for more details.



**All travelers must adhere to the following regulations while on tour:**

1. All scheduled activities are obligatory. If you are sick or have a physical ailment that might prevent you from participating in an activity, you must tell the Group Leader, who should notify the Tour Director.

2. If you want to visit friends or relatives in a destination country, your Group Leader must be told before the tour begins. Please complete the Tour Leave Form, found under Forms and Resources on the Help Center (eftours.com/help-center), to receive permission for the visits. You must then give the form to your Tour Director upon arrival.

3. You are expected to respect the nightly curfew that your Group Leader may set for your own safety and security. Room checks will be conducted at the Group Leader's discretion. Visitors or group members of the opposite sex are not permitted in your room.

4. Smoking is not allowed on buses, during meals, in hotel rooms, or in any other shared, enclosed space.

5. Hitchhiking and the driving or renting of any motor vehicle is strictly forbidden for all travelers.

6. You are required to pay for any phone calls or incidental personal expenses incurred at hotels. These will be payable the evening before departure at each hotel.

7. Travelers under the age of 18 may not consume alcohol on tour. Travelers over the age of 18 (or older, if local laws require) may consume beer or wine in moderation. The consumption of hard liquor is strictly forbidden. Group Leaders and/or parents may prohibit all alcohol consumption at their discretion. Excessive drinking by any traveler will not be tolerated and will result in dismissal from tour at the traveler's own expense.

8. Illegal activities will not be tolerated and are punishable by immediate dismissal from the tour. If you are involved in any illegal activities, all costs to return home are at your own expense. If the local authorities are involved, you will be subject to the laws of the country you are visiting.

9. Payment for damage done to hotel rooms or to buses is your responsibility. If you notice any damage upon arrival at a hotel, you should notify the Tour Director immediately.

# EXHIBIT 2



## Your voucher is now available

EF Future Travel Voucher

VALID THROUGH
Sep. 30, 2022

TRAVELER
**Jack Sharar**

VALUE
**$3,570.00**

REDEMPTION CODE
**2154944-855256**

We're sorry Jack's *Berlin, Prague, Krakow and Budapest* tour didn't happen as planned, but we're committed to helping them see the world at another time. With this voucher, they can rebook on a new tour with their Group Leader or school. Or, they can redeem it for *any* other EF travel product. Unable to travel? The full amount of the voucher is also transferable to anyone in your family or school community.

The best part is, the voucher is valid through September 30, 2022, which means you and your family have more than two years to

explore all of the possibilities and choose the experience that's right for you.

**Redeem voucher**

Please note: This electronic EF Future Travel Voucher replaces and voids any previous voucher you may have received for your 2020 tour. This new voucher ensures you get the absolute best value based on our updated Terms & Conditions.

FAQ                                                    →

Terms & Conditions                                     →

**Prefer a refund?**

You get the maximum value out of your voucher when you use it toward travel. Plus, you have more than two years to explore your possibilities.

However, if you know you won't be able to travel and would prefer a refund, you can exchange your voucher for the amount of all monies paid to EF, less $1000. (This allows us to partially cover costs related to non-recoverable payments to our suppliers, our staff, and the investment we have always made and continue to make in itinerary, date, and destination flexibility.)

**Request a refund →**

## Questions?

We're always here for you. Just give us a call
at 800-665-5364.

© 2020 EF Education First. All rights reserved.
Two Education Circle, Cambridge, MA 02141

Privacy policy  |  View online

1        **CERTIFICATE OF SERVICE**

2        I hereby certify that I electronically filed the following documents with the

3    Clerk of the Court for the United States District Court for the Southern District of

4    California by using the CM/ECF system on May 15, 2020.

5        • **FIRST AMENDED COMPLAINT FOR INJUNCTIVE**

6          **RELIEF FOR VIOLATION OF THE CALIFORNIA**

7          **UNFAIR COMPETITION LAW AND FOR DAMAGES**

8          **FOR VIOLATION OF THE CALIFORNIA**

9          **CONSUMER LEGAL REMEDIES ACT**

10       I certify that all participants in the case are registered CM/ECF users and

11   that service will be accomplished by the CM/ECF system.

12       I declare under penalty of perjury that the forgoing is true and correct, and

13   that this declaration was executed on May 15, 2020, at San Francisco, California.

14

15   Dated: May 15, 2020          /s/ *Winni Yan*

16                                Winni Yan

17

18

19

20

21

22

Certificate of Service

*Rochfort, et al. v. EF Institute for Cultural Exchange, Inc., et al.*, Case No. 3:20-
cv-00508-GPC-BLM